**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

LORETTA TEE,

                          Plaintiff,

v.                                   CIVIL ACTION NO.   5:12-cv-00094

BROWN REPORTING AGENCY, INC., et al.,

                          Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Loretta Tee, brings this civil action against Defendants, Brown Reporting Agency, Inc., H. David Stanley, and Carolyn Sue Stanley ("Defendants") stemming from her employment with Brown Reporting Agency, Inc. ("Brown Reporting"). (*See,* "Am. Compl." (Document 1-1 at 20-38.))   Plaintiff alleges that "[t]hroughout her employment at Brown Reporting, Defendant H. David Stanley repeatedly made unwelcome, offensive and inappropriate sexual remarks, innuendos, gestures and advances towards [her] . . . repeatedly touched, grabbed and fondled [her] in an unwelcome, offensive and inappropriate manner . . . repeatedly grabbed [her] clothing and pulled it away from her body, attempting to view under her clothing. . . [and] repeatedly grabbed [her] breasts and made overtures and comments about engaging in sexual activity with [her]." (*Id.* at ¶¶ 9-12.)   Moreover, Plaintiff alleges that he "attempted to kiss [her] in an inappropriate and unwelcome manner." (*Id.* at ¶ 13.) Plaintiff asserts that she "reported Defendant H. David Stanley's unwelcome, offensive, and inappropriate behavior to Defendants Brown Reporting and Carolyn Sue Stanley in July, 2009." (*Id.* at ¶ 14.)   Plaintiff alleges that he "continued to make lewd, unwelcome, inappropriate, hostile and harassing remarks to [her], after

[she] reported the same." (*Id.* at ¶ 16.)   Plaintiff states that "[i]mmediately upon service of the original Complaint on Defendant H. David Stanley, he confronted [her], screamed at her, and dismissed her from employment." (*Id.* at ¶ 21.)   Plaintiff also alleges that she was "often required by Defendants to work, and did work, without compensation or overtime pay" and was "often required [] to perform duties outside of her regular employment as an office manager and without additional compensation." (*Id.* at ¶¶ 24-25.)

Plaintiff's Amended Complaint contains eight counts: (1) sex discrimination and sexual harassment contrary to the West Virginia Human Rights Act ("WVHRA") by Defendants; (2) retaliatory discharge or in the alternative constructive discharge, contrary to the WVHRA by Defendants; (3) sex discrimination and sexual harassment contrary to substantial public policy of the state of West Virginia by Defendants; (4) retaliatory discharge, or in the alternative, constructive discharge, contrary to substantial public policy of the state of West Virginia by Defendants; (5) intentional and/or negligent infliction of emotional distress by Defendants; (6) negligent supervision, hiring, training, discipline and retention against Defendants Brown Reporting and Carolyn Sue Stanley; (7) violation of the West Virginia Wage Payment and Collection Act ("WVWPCA") by Defendant Brown Reporting; and (8) violation of the Fair Labor Standards Act ("FLSA") by Defendant Brown Reporting. (*Id.* at 20-38.)

On November 19, 2012, Defendants filed a Motion for [Partial] Summary Judgment ("Def.'s Mot.") (Document 31), exhibits, and supporting memorandum ("Def.'s Mem.") (Document 32), as to Counts I, II, III and VIII of Plaintiff's Amended Complaint. (Document 31 at 1.)   In support, Defendants attach as exhibits excerpts from the deposition of Carolyn Sue Stanley ("Def.'s Mot. Ex. A") (Document 31-1), the deposition of Plaintiff ("Def.'s Mot. Ex. B")

(Document 31-2), and Brown Reporting Agency, Inc.'s responses to Plaintiff's First Set of Interrogatories, Request for Production of Documents and Request for Admissions. ("Def.'s Mot. Ex. C") (Document 31-3.)

Also on November 19, 2012, Plaintiff filed a Motion for Partial Summary Judgment Against Brown Reporting Agency, Inc., on Count VIII of the Amended Complaint. ("Pl.'s Mot.") (Document 33), attached exhibits, and memorandum in support. (Document 34.) Additionally, Plaintiff requests that the Court "award her the amount of $55,395.23 in overtime wages, liquidated damages pursuant to the FLSA, attorney fees and costs pursuant to the FLSA, and such other relief as the Court deems appropriate and just." (Document 33 at 2.) In support, Plaintiff attaches as exhibits, excerpts from her deposition ("Pl.'s Mot. Ex. A") (Document 33-1), the deposition of Carolyn Sue Stanley ("Pl.'s Mot. Ex. B") (Document 33-2), the deposition of H. David Stanley ("Pl.'s Mot. Ex. C") (Document 33-3), Brown Reporting Agency, Inc.'s responses to Plaintiff's First Set of Interrogatories, Request for Production of Documents and Request for Admissions ("Pl.'s Mot. Ex. D") (Document 33-4), Plaintiff's Responses to Defendant Brown Reporting Agency, Inc.'s First Set of Interrogatories and Request for Production of Documents ("Pl.'s Mot. Ex. E") (Document 33-5), and the U.S. Department of Labor, Opp. Letter, FLSA 2005-8. ("Pl.'s Mot. Ex. F") (Document 33-6.)

After careful consideration of the parties' motions, memoranda in support and in opposition, attached exhibits and the entire record, the Court, for the reasons set forth below, grants in part and denies in part Defendants' motion for partial summary judgment and denies Plaintiff's motion for partial summary judgment.

## I.     PROCEDURAL HISTORY

On July 6, 2011, Plaintiff filed her Complaint in the Circuit Court of Raleigh County, West Virginia, against Defendants asserting seven causes of action. ("Complaint" (Document 1-1), at 1-6.) Defendants were served with a summons and a copy of the Complaint on November 1, 2011. (Notice of Removal (Document 1), at 1.)   On November 30, 2011, the parties stipulated that Defendants' time to file their responsive pleadings would be extended until after Plaintiff filed her Amended Complaint. (*Id.* at 2.)   Plaintiff filed her Amended Complaint ("Am. Compl." (Document 1-1) at 20-38) on December 28, 2011. (Notice of Removal at 2) (citing Document 1-2 at 2.)

On January 18, 2012, Defendants removed the case to the Southern District of West Virginia, pursuant to 28 U.S.C. § 1446, alleging this Court had jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). (Notice of Removal at 1-3.) Defendants contend that "[r]emoval is appropriate in this case based on federal question jurisdiction [because]  . . . Plaintiff's claim that Defendants interfered with her rights pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.,* arises under the Constitution and laws of the United States." (*Id.* at 2.)   Therefore, Defendants contend that "federal question jurisdiction exists with this Court under 28 U.S.C. § 1331 and this action is removable under 28 U.S.C. § 1441(a)." (*Id.* at 3.) Defendants also assert that this Court has supplemental jurisdiction over Plaintiff's state law claims because "[e]ach of Plaintiff's claims arises out of her employment with Brown Reporting, and related interactions with Defendants Carolyn Sue Stanley and H. David Stanley." (*Id.*) Defendants contend that removal was timely because it was "filed less than 30 days after receipt by the Defendants of a copy of the amended pleading from which the Defendants first ascertained that

4

this case was removable." (*Id.*)[1]  Plaintiff did not challenge the removal. Defendants filed their answer to the Amended Complaint on January 25, 2012. (Document 5.)

As stated above, on November 19, 2012, both parties filed their Motions for Partial Summary Judgment, attached exhibits, and supporting memoranda. (*See,* Documents 31, 32, 33, 34.) On November 29, 2012, Defendants filed a *Motion to Strike Plaintiff's Motion for Partial Summary Judgment* (Document 36), wherein they argue that "Plaintiff's Summary Judgment Memorandum is 24 pages in length, exceeding the limit set forth in [the Local Rules of Civil Procedure for the U.S. District Court for the Southern District of West Virginia] L.R. 7.1(a)(2)." (*Id.* at 1.) The following day, Plaintiff filed a *Motion to Extend the Time to File Memorandum of Law in Support of Motion for Summary Judgment or in the Alternative to Exceed the Page Limits* (Document 37), wherein Plaintiff's counsel asserts that his error was attributable to "excusable neglect." (*Id.* at 2.)[2]  On December 3, 2012, the parties filed their respective Responses in Opposition (Documents 38 and 39) and on December 10, 2012, filed their Replies (Documents 41 and 42).  On December 17, 2012, the Court denied *Defendant's Motion to Strike*, granted Plaintiff's *Motion to Extent the Time to File Memorandum of Law in Support,* and directed the Clerk to file said memorandum. (Document 43) ("Pl.'s Mem.") (Document 44).

## II.   STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P.

---

[1] Defendants note that "[t]he FLSA claim was alleged for the first time in the Amended Complaint." (*Id.* at 2.)
[2] Plaintiff's counsel stated that he "overlooked the twenty page limitation pursuant to Rule 7.1 due to an independent recollection that Rule 7.02(a) of the Local Rules of Civil Procedure for the United States District Court for the Northern District of West Virginia permitted a twenty-five (25) page limitation for Memorandum of Law." (*Id.*)

56(a) (emphasis added); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). "Material facts are those necessary to establish the elements of a party's cause of action." *Rawls v. Associated Materials, LLC.,* No. 1:10-cv-01272, 2012 WL 3852875, at *2 (S.D.W.Va. Sept. 5, 2012) (Faber, J.) (citing *Anderson*, 477 U.S. at 248). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. (*Id.*) "Even if there is no dispute as to the evidentiary facts, summary judgment is not appropriate when the parties dispute ultimate *factual conclusions. Rawls,* 2012 WL 3852875 at *2 (citing *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir.1991)(emphasis added)).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. "If the moving party meets its burden under Rule 56(a), then the non-moving party must set forth specific facts that would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial." *Rawls,* 2012 WL 3852875 at *2 (citing *Celotex,* 477 U.S. at 322-23). The nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. In other words, "the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).   If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.

### III.        JURISDICTION

The threshold question for the Court to consider is whether it has federal subject matter jurisdiction in this case.   By statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).   As noted above, this civil action was removed to this Court pursuant to 28 U.S.C. § 1446 and Defendants' assertion that Plaintiff's eighth claim arises under the Fair Labor Standards Act of 1938, ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Notice of Removal at 1-2.) Accordingly, Defendants relied on the FLSA as grounds for federal question jurisdiction pursuant to 28 U.S.C. § 1331, which provides that this Court has "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.   The Court agrees that it has original subject matter jurisdiction over Plaintiff's eighth count in that it arises under the laws of the United States.

The Court must now determine whether it has subject matter jurisdiction over the remaining state law claims. "When a case presents a federal question, the court has supplemental jurisdiction over state law claims which are part of the same case or controversy." *Pinnoak Resources, LLC v. Certain Underwriters at Lloyd's, London*, 394 F.Supp.2d 821, 828 (S.D.W. Va. Jan. 13, 2005) (Faber, J.) (citing 28 U.S.C. § 1367.) "The United States Supreme Court has ruled that the supplemental jurisdiction statute applies to removal actions." (*Id.*) (citing *City of Chicago*

*v. International College of Surgeons,* 522 U.S. 156 (1997)).   The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that "the court is permitted, but is not required, to retain jurisdiction over the related state claims." *Pinnoak Resources*, 394 F.Supp.2d at 828.

Defendants assert that "Plaintiff's Amended Complaint alleges that Brown Reporting, through Carolyn Sue Stanley, failed to act properly as her employer with respect to several different claims, including supervision of the workplace, payment of overtime and payment of final wages." (Notice of Removal at 3.) Defendants further contend that "[t]his theme, and the operative set of facts relating thereto, runs throughout each of the allegations in Plaintiff's Amended Complaint, and the Court may exercise supplemental jurisdiction over the state law claims contained therein." (*Id.*)   The Court finds that Plaintiff's claims arise from the same case or controversy because they all stem from her employment with Defendant Brown Reporting, specifically the interactions with her co-worker, H. David Stanley, and the lack of supervision from Defendant Carolyn Sue Stanley. (*See,* Am. Compl.)   Thus, the Court has supplemental jurisdiction over Plaintiff's state law claims.

## IV.      DISCUSSION

### A.  Counts I and II.

Defendants argue that Plaintiff's "claims for sexual discrimination and harassment and retaliatory discharge under the Human Rights Act (Count I and II) fail as a matter of law because Defendants . . . are not 'employers' as defined by the West Virginia Human Rights Act." ("Def.'s Mem." (Document 32) at 1.) The West Virginia Human Rights Act, ("WVHRA"), W. Va. Code §§ 5-11-1 *et seq.,* defines an employer as "any person employing twelve or more persons within the

state for twenty or more calendar weeks in the calendar year in which the discrimination allegedly took place or the preceding calendar year." W. Va. Code § 5-11-3(d).

Defendants state that "[they] only employed Tee full-time during the time period at issue in this lawsuit, and they do not qualify as employers under the [WVHRA]." (Def.'s Mot. at 2) (citing ("Def.'s Mot. Ex. A") (Document 31-1) at Tr. 14; ("Def.'s Mot. Ex. B") (Document 31-2) at Tr. 53, 80.) Further, Defendants state that "Brown Reporting contracts with court reports and typists – all independent contractors – to assist in providing services to its clientele." (*Id.* at 2) (citing Def.'s Mot. Ex. A at Tr. 14.)   Thus, Defendants contend that "[b]ecause they did not employ at least twelve persons per year, [they] are not employers under the [WVHRA]" (*Id.* at 6) (citing W. Va. Code § 5-11-3(d)) and, therefore, Plaintiff "cannot maintain a cause of action for discrimination under the [WVHRA]." (*Id.*)

In response, Plaintiff argues that "[w]ith regard to Counts I and II, there are genuine issues of material fact as to whether Brown is an 'employer' under the [WVHRA]." ("Pl.'s Resp." (Document 39) at 1.) Plaintiff argues that "[w]hether the typists and court reporters were employees or independent contracts under the Act involves disputed factual assertions that should be resolved by a jury." (*Id.* at 8.)[3]   Furthermore, Plaintiff states that while "Defendants suggest that [she] testified that Brown 'only employed four other individuals . . . during the time period at issue[,]'" based on her deposition testimony, there are "at least fourteen (14) potential employees: six office workers (including Ms. Tee and Sarah Boyd); four typists (assuming Anna Wright should be included in the office worker and not typist category); at least three court reporters (not including the Mr. or Mrs. Stanley or Jean Brown); and one proofreader (Duffy Boyd)." (*Id.*)

---

[3] Plaintiff argues that "Brown clearly had the right to control the work of the court reporters, typists and proofers at issue." (*Id.* at 9.)

9

In reply, Defendants assert that "[Plaintiff's] response provides no evidence that Brown Reporting employed twelve or more employees at any one time, let alone within the last year of her employment." ("Def.'s Reply" (Document 41) at 2.)   Moreover, they assert that Plaintiff "cannot even show that the four individuals who were actual employees of Brown Reporting worked there at the same time within the past year." (*Id.*)   Defendants also argue that Plaintiff's addition of typists, court reports and a proofreader to the "employment count" is unwarranted because she even testified that they were independent contractors. (*Id.* at 3) (citing Def.'s Mot. Ex. B at Tr. 197, 199.)[4]   Although they note that "[w]hile [her] description of these individuals may not be legally determinative, it certainly demonstrates her failure to establish as a matter of law that they are employees, as opposed to independent contractors, for purposes of establishing jurisdiction under the [WVHRA]." (*Id.*)

Based on the deposition testimonies of Mrs. Stanley and Plaintiff, Defendants contend that there is no genuine dispute that they are not employers under the WHHRA.   Defendants argue that "[t]he four people that were actual employees of Brown Reporting during [Plaintiff's] employment were **not** employed at the same time, thus they cannot be added together to reach the necessary 'employee count' under the statute." (Def.'s Reply at 3.)   Mrs. Stanley testified that Plaintiff was the only employee and that the court reporters were "sub-contractors." (Def.'s Mot. Ex. A at Tr. 14.)   Defendants also rely on Plaintiff's own testimony in which she indicated that she worked in the downtown office by herself because Kendra did not return to work at the office after she had her baby[5] and "Valerie worked with [her] for a while when . . . the office was still in

---

[4]  Plaintiff notes that "[w]hether an individual is an employee or independent contractor is a legal conclusion for the Court to make based upon facts found by the jury, or undisputed facts, and Ms. Tee's repeating or agreeing with Defendants' counsel's phraseology during her deposition is indeterminate on this issue." (Pl.'s Resp. at 8.)

[5]  Based on Plaintiff's exhibits, the Court notes that Kendra had her child prior to January 27, 2006, because in her

the house." (Def.'s Mot. Ex. B at Tr. 79-80.)[6]   Defendants also cite to Plaintiff's testimony that "Anna worked with [her] for a short period of time" (*Id.* at Tr. 80.) and that "Barbara's daughter [Susan Boyd] worked a few times [in the downtown office]." (*Id.* at Tr. 81.)   Based on the foregoing, Defendants contend that that there is no evidence that they employed at least twelve people during the relevant time as required by the WVHRA.

Plaintiff has not offered "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson*, 477 U.S. at 256.   She has merely made a list of all of Brown Reporting's previous employees, without submitting any evidence that they worked together for twenty or more weeks, and speculated that the "independent contractors" *could* be "employees." The evidence she offers in support of classifying the typists and court reporters as employees does not support a reasonable inference or conclusion of the same.   For example, Plaintiff notes that "[w]ith regard to the court reporters, Mrs. Stanley testified: " . . . all they do is come and use our equipment and sit there and take the job . . ." (Pl.'s Resp. at 8) (quoting "Pl.'s Resp. Ex. B" (Document 39-2) at Tr. 16.)   Plaintiff also states that "Mrs. Stanley further testified that the typists are paid by the page and the court reporters are paid a percentage of the invoice, in both cases the amount of which is determined by Mrs. Stanley." (*Id.* at 9) (citing Pl.'s Resp. Ex. B at Tr. 16, 30.) Plaintiff claims that "[t]here are no contracts between Brown and any court reporter, typist or proofer" (*Id.*) (citing Pl.'s Resp. Ex. B at Tr. 16.) and argues that summary judgment is inappropriate because "[a]t least there is more than one inference that could be drawn from the facts set forth above." (*Id.*)   However, her attempt at reclassifying the so-called "independent

---

handwritten diary entry for January 27, 2006, Plaintiff wrote "since Kendra left . . . he's getting worse." (Document 39-4 at 84.)

[6]  The Court notes that Plaintiff testified that "[she] think[s] Bonnie left towards the end of November [2005]." (Def.'s Mot. Ex. B, at Tr. 62.)

contractors" as "employees" is no "more than 'mere speculation or the building of one inference upon another. . .'" *Perry*, 2012 WL 2130908, at *3 (quoting *Beale*, 769 F.2d at 214.

Drawing all permissible inferences from the underlying facts in the light most favorable to Plaintiff, *Matsushita*, 475 U.S. at 587-88, the Court finds there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law with respect to Counts I and II of Plaintiff's Amended Complaint. *Celotex*, 477 U.S. at 322-23.   A review of the record reveals that Plaintiff has pointed to no *evidence* in the record which establishes the requisite number of employees during the relevant time frame.   Mere argument, innuendo or inferences built upon inferences is simply not sufficient to create a *genuine* dispute of material fact with respect to whether Brown Reporting employed "twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the discrimination allegedly took place or the preceding calendar year."   W. Va. Code § 5-11-3(d).   Therefore, the Court finds the Defendants' motion for partial summary judgment as to these two claims should be granted.

### B.  Count III.

Defendants also seek an order granting summary judgment with respect to Plaintiff's claim of "sex discrimination and sexual harassment contrary to substantial public policy of the state of West Virginia" as alleged in Count III. (Pl.'s Am. Compl. at ¶¶ 52-64.)   Defendants argue that "[w]ithout allegations of a connected discharge, this claim does not fall under the purview of a Harless-type civil action." (Def.'s Mem. at 7.)   In *Harless v. First National Bank*, the West Virginia Supreme Court of Appeals recognized "that an employer may subject himself to liability if he fires an employee who is employed at will if the employee can show that the firing was

motivated by an intention to contravene some substantial public policy." *Harless v. First National Bank*, 162 W.Va. 116, 199 (1978).

Although Defendants "maintain that [Plaintiff] was not terminated, but voluntarily quit her job," they argue that they are entitled to summary judgment because "[Plaintiff] has admitted that the alleged reason for her discharge (constructive or otherwise) was actually in retaliation for her filing of this lawsuit." (Def's Mem. at 1, 7.)   Defendants cite to Plaintiff's deposition in which she was asked "[w]hat did you understand the reason for your termination to be?" and she answered "[t]he filing of that lawsuit." (*Id.* at 7) (quoting Def.'s Mot. Ex. B at Tr. 245.)   Defendants assert that they are entitled to summary judgment as to Count III "[b]ecuase there is no genuine issue of material fact as to the alleged reason [Plaintiff] was discharged." (*Id.* at 8.)

In response, Plaintiff asserts that Defendants apparently misread Count III of the Amended Complaint because it alleges a claim for sexual harassment as opposed to any claim based on her termination. (Pl.'s Resp. at 9.)   Plaintiff indicates that "[i]n West Virginia, a claim for sexual harassment is presented if a plaintiff demonstrates: '(1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer.'" (*Id.* at 10) (quoting *Akers v. Cabell Huntington Hospital, Inc.,* 215 W. Va. 346, 351 (2004)).   Plaintiff maintains that she has "presented evidence with regard to each of the four elements." (*Id.*)   Moreover, she contends that "termination is not required to prevail on this claim." (*Id.*)[7] Plaintiff asserts that "[i]n this case, there are disputed facts

---

[7] Plaintiff contends that "[l]ay testimony that Plaintiff suffered 'mental anguish, aggravation, inconvenience, humiliation, embarrassment or loss of dignity' can support an award of incidental noneconomic damages." (*Id.* at 10-11) (quoting *Akers,* 215 W. Va. 346 at Syl. Pt. 7.) Moreover, she asserts that she has "testified regarding just such types of damage." (*Id.* at 11) (citing "Pl.'s Resp. Ex. A" (Document 39-1) at Tr. 121, 142, 164-65, 211, 238, 245-46.)

with regard to each of the elements set forth above [and] [a]s such, Defendants are not entitled to summary judgment with regard to [her] sexual harassment claim." (*Id.* at 11.)

In reply, Defendants argue that "[Plaintiff] attempts to apply the standard of a *Harless* claim to Count III, which contains factual allegations to which *Harless* was never meant to be applied – general claims of sexual harassment that are **not related to Plaintiff's discharge**." (Def.'s Reply at 3) (emphasis in original.)   Defendants contend that Count III "is wholly disproved by [Plaintiff's] own testimony – at no point has [Plaintiff] testified that her supposed firing was in any way related to the sexual harassment or sexual discrimination she claims to have suffered." (*Id.* at 4.)   Defendants argue that "[b]ecause [Plaintiff] cannot present any evidence to support the basic elements of a *Harless* claim, [they] should be granted summary judgment on Count III." (*Id.*)

The Court finds that Defendants are entitled to judgment as a matter of law with respect to Count III of Plaintiff's Amended Complaint.   The allegations in Count III neither arise under the WVHRA nor involve her termination against substantial public policy, thereby invoking *Harless*. (*See,* Pl.'s Am. Compl.)   Because Plaintiff identifies no legal basis for her claims in Count III, the Court finds that Defendants' motion should be granted.

In her response to Defendants' motion, Plaintiff relies on two cases from the Supreme Court of Appeals of West Virginia and represents that "[i]n West Virginia, a claim for sexual harassment is presented if a plaintiff demonstrates: [the above referenced factors]." (Pl.'s Resp. at 10) (quoting *Akers,* 215 W. Va. at 351.)   Moreover, Plaintiff contends that "[a] claim for hostile environment sexual harassment is made if [certain elements are met.]"(*Id.*) (quoting Syl. Pt. 7, *Hanlon v. Chambers,* 195 W.Va. 99 (1995)).   However, Plaintiff's representation is misleading.

14

The court in *Akers* held "[t]o establish a claim for sexual harassment *under the [WVRHA]*, based upon a hostile or abusive work environment, a plaintiff-employee must prove [the above referenced factors]." *Akers,* 215 W. Va. at 351 (emphasis added.) The court also noted that it "identified the type of conduct that qualifies as sexual harassment in syllabus point seven of *Hanlon* . . ." (*Id.*) Both cases cited by Plaintiff involved claims based on violations of WVHRA. However, Count III of Plaintiff's Amended Complaint is not based on the WVHRA. Rather, it alleges a "violation of the substantial public policy of the State of West Virginia *as reflected in the [WVHRA.]*" (Pl.'s Am. Compl ¶ 54) (emphasis added.)

The Court finds that Count III fails as a matter of law for several reasons.  First, Plaintiff has no cognizable claim for sexual harassment against Defendants under the WVHRA because Brown Reporting is not an "employer" under the WVHRA.   Second, Plaintiff cites to no case law supporting a claim for sexual harassment apart from the WVHRA.   Third, Plaintiff states that "Count III has nothing to do with [her] termination in violation of the Act and public policy, it is a claim for sexual harassment." (Pl.'s Resp. at 9.)   Therefore, as Defendants note, Plaintiff's claim cannot survive under *Harless,* inasmuch as Count III does not involve Plaintiff's alleged discharge.

Accordingly, the Court finds that Defendants' motion for partial summary judgment with regard to Count III of Plaintiff's Amended Complaint should be granted.

### C.  Count VIII.

Defendants and Plaintiff both move for an order granting summary judgment in their favor with respect to Count VIII of Plaintiff's Amended Complaint, which alleges that Defendant Brown Reporting violated the Fair Labor Standards Act ("FLSA").   The FLSA requires that employees

15

who work more than forty hours during a work week receive overtime compensation "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Employees "employed in a bona fide executive, administrative, or professional capacity" are exempt. 29 U.S.C. § 213(a)(1). "Determining whether an employee is exempt is a mixed question of law and fact." *Withrow v. Sedgwick Claims Management Service, Inc.,* 841 F.Supp.2d 972, 975 (S.D.W. Va. 2012) (Goodwin, J.) (citing *Harper v. Gov't Emps. Ins. Co.,* 754 F.Supp.2d 461, 463 (E.D.N.Y. 2010)). "How an employee spends his time is a question of fact." (*Id.*) "Whether an employee's duties render him subject to an exemption is a question of law." (*Id.*) (citing *Robinson-Smith v. Gov't Emps. Ins. Co.,* 590 F.3d 886, 891 (D.C. Cir.2010)). "The employer bears the burden of proving by clear and convincing evidence that its employees fall within an exemption." (*Id.*) (citing *Desmond v. PNGI Charles Town Gaming, L.L.C.,* 564 F.3d 688, 691 (4th Cir.2009)).   Moreover, the Fourth Circuit Court of Appeals has cautioned that "the remedial nature of the statute requires that FLSA exemptions be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within [the exemptions'] terms and spirit.'"   *Darveau v. Detecon, Inc.,* 515 F.3d 334, 337-38 (2008) (internal citation omitted.)

The term "employee employed in a bona fide administrative capacity" is defined as any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

It is undisputed that Plaintiff was compensated at a rate of not less than $455 per week. (*See,* Def.'s Mem. at 9; Pl.'s Resp. at 12.)   Accordingly, the parties' respective motions for partial summary judgment focus on the second and third prongs of the administrative exemption test.

With regard to the second prong, the regulations provide that "[t]he phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee." 29 C.F.R § 541.201(a). "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." (*Id.*)   For example "work in functional areas such as . . . quality control; . . . personnel management; [and] computer network, internet and database administration." 29 C.F.R § 541.201(b).

With regard to the third prong, the regulations provide that "[i]n general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R § 541.202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." (*Id.*)   The regulations provide a nonexclusive list of factors to consider in determining whether an employee satisfies this third element, including:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the

employee performs work that affects business operations to a substantial degree, . . . whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; . . . and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

"The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c). However, it "does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." (*Id.*) In other words, "[t]he decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action." (*Id.*) However, the regulations caution that "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). It "does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." (*Id.*)

### i.    *Defendants' Motion.*

Defendants contend that "[Plaintiff] fulfills all three requirements to be deemed an employee working in an administrative capacity, and the FLSA's overtime provisions do not apply to [her] employment as a matter of law." (Def.'s Mot. at 8-9.) With regard to the second prong, Defendants assert that "[Plaintiff's] primary duty was managing the office and running the business operations relating to coordinating court reporting and transcribing jobs to provide clients

18

with a final product of a deposition transcript." (Def.'s Mem. at 10.) Defendants contend that "[she] managed requests for court reporting and transcription jobs from clients and made recommendations and/or decisions with respect to selecting typists to perform jobs based on her knowledge of their performance and the needs of clientele." (Id.)[8] (citing Def.'s Mot. Ex. B at Tr.74-76, 98-99.)   Defendants assert that "[Plaintiff] reviewed transcripts from typists, oversaw the process of finalizing deposition transcripts and providing them to clients." (Id.) (citing Def.'s Mot. Ex. B at Tr. 76, 101-02.)   Moreover, Defendants state that "[she] would also be the first contact for client issues with transcripts and she would work with Mrs. Stanley to solve any problems in this regard." (Id.) (citing Def.'s Mot. Ex. B at Tr. 102-03.)

With regard to the third prong, Defendants assert that "[Plaintiff] often used independent judgment and discretion in her position as office manager to run the Brown Reporting office and manage transcription projects for clients." (Id. at 11.)   For example, Defendants contend that "[Plaintiff] made regular decisions with respect to selection of typists and finalization of deposition transcripts for clients." (Id.) (citing Def.'s Mot. Ex. B at Tr. 74-76, 98-99, 101-02.) Defendants also assert that "[she] had authority to request that Anna Wright work as an hourly-paid assistant to help with duties at the office as she saw fit and direct her duties." (Id.) (citing Def.'s Mot. Ex. B at Tr. 94.) Moreover, Defendants state that "[she] worked without constant supervision, was often the only employee at the office, and completed her duties according to her own expectations of how and when to finish projects." (Id.)

Defendants cite to Judge Posner's opinion in *Verkuilen v. MediaBank, LLC*, 646 F.3d 979 (7th Cir. 2011), for the proposition that whether an employee is supervised is an important factor in

---

[8] Defendants contend that "[t]he record does not contain a single instance of Mrs. Stanley rejecting one of [Plaintiff's] recommendations." (Id. at 10.)

determining whether that employee falls under the FLSA's administrative exemption. (Def.'s Mem. at 11-12) (citing *Verkuilen,* 646 F.3d at 981) ("Employees tasked with jobs requiring the exercise of independent judgment usually are expected to work with minimum supervision even when they are working in their office rather than on a customer's premises.")[9] Defendants assert that "Mrs. Stanley rarely came to the office to supervise her work" and Plaintiff stated that she "tried not to bug her with every little thing." (Def.'s Mem. at 12) (citing Def.'s Mot. Ex. B at Tr. 81, 99.)   Moreover, Defendants note that Plaintiff admits that "Mrs. Stanley did not direct her to work on weekends or late at night," and that "[Mrs. Stanley] didn't tell [her] [she] needed to do these things [rather] [she] knew what had to be done and [she] did it." (*Id.*) (citing Def.'s Mot. Ex. B at Tr. 136-37.)   Therefore, Defendants argue that "because [Plaintiff] could – and allegedly did – assign herself countless overtime, she is not the type of employee that should be able to collect overtime." (*Id.* at 13.)

In response, Plaintiff "avers that the undisputed facts establish . . . that she was not an exempt employee under FLSA." (Pl.'s Resp. at 12.)   Plaintiff observes that "[i]n order to qualify for this administrative exemption, the 'defendant must show that [the] plaintiff engaged in activities such as 'running the business itself or determining its overall course,' not just in the 'day to day carrying out' of business affairs.'" (*Id.* at 14) (quoting *Bertrand v. Children's Home,* 489 F.Supp.2d 516, 519-20 (D.Md. 2007) (internal citations omitted.)) Plaintiff asserts that when "[f]ocusing on the actual tasks and duties that [she] performed during her employment with Brown, it is clear that she performed only day to day clerical duties without the exercise of

---

[9]  Judge Posner rationalized that "a legal requirement to pay a worker a fixed percentage increase in his hourly wage if he works more than 40 hours a week doesn't fit a worker who spends much of his work time off   the employer's premises, where he can't be supervised and so if entitled to overtime would be tempted to inflate his hours." *Verkuilen,* 646 F.3d at 981.

discretion and independent judgment with respect to matters of significance." (*Id*. at 12-13.) For example, Plaintiff states that "the tasks [she] performed included answering the phone, scheduling court reporters from a list compiled by Mrs. Stanley for court reporting jobs, inputting corrections of others into deposition transcripts, finalizing deposition transcripts, mailing deposition transcripts and mailing billing statements." (*Id*. at 15) (citing "Pl.'s Resp. Ex. B" (Document 39-2) at Tr. 36-37; "Pl.'s Resp. Ex. C" (Document 39-3) at Tr. 44-45, 74-75.)   Plaintiff further argues that her primary duties were "secretarial in nature." (*Id*. at 18.)   According to Plaintiff, "Mrs. Stanley made clear that it was she who authorized [Plaintiff] numerous phone calls to bring in assistance if needed." (*Id.*) (citing Pl.'s Resp. Ex. B at Tr. 34-35.)   Moreover, she claims that "Mrs. Stanley established the list and procedure to select court reporters." (*Id.*) (citing Pl.'s Resp. Ex. B at 14, 56-58, 110-11.)   Plaintiff also contends that *Verkuilen* is distinguishable because "[her] typical duties did not require her to be off premises[;] . . . [t]hus [she] was not in a position where she *couldn't* be supervised and so, if entitled to overtime, would be tempted to inflate her hours." (*Id*. at 18.)

In reply, Defendants stress that "[Plaintiff]…was employed in a capacity that exempted her from eligibility for overtime under the administrative exemption." (Def.'s Reply at 4.) Defendants contend that "[t]his is demonstrated by not only [Plaintiff's] testimony but also other evidence in the record . . ." (*Id.*)

### ii.    *Plaintiff's Motion.*

Plaintiff argues that "[t]he undisputed facts developed through discovery in this matter establish that [she] was employed by Brown Reporting, Inc. in a position that does not fit within the administrative exemption to the FLSA." (Pl.'s Mot. at 1.)   As to the second prong, Plaintiff

21

argues that "in completing her day-to-day designated tasks [she] did not perform work 'directly related to the management or general business operations of' Brown or its customers." (Pl.'s Mem at 12) (citing 29 C.F.R. §541.200(a)). Plaintiff asserts that "[s]he performed office work including answering the phones, scheduling court reporters from a list compiled by Mrs. Stanley for court reporting jobs, inputting corrections of others into deposition transcripts, finalizing deposition transcripts, mailing deposition transcripts and mailing billing statements." (*Id.* at 11-12) (citing Pl.'s Mot. Ex. A (Document 33-1) at Tr. 53-54, 70-71; Pl.'s Mot. Ex. B (Document 33-2) at Tr. 36-37; Pl.'s Ex. C (Document 33-3) at Tr. 44-45, 74-75). Plaintiff contends that "Mrs. Stanley ran the business and made all substantive decisions as to management policies and general business operations." (*Id.* at 12.)   Moreover, Plaintiff states that "Mrs. Stanley further admits that [Plaintiff] did not create or determine the general policies for the acceptance of court reporting jobs or the general polices for determining which typist or court reporter was assigned to which job." (*Id.* at 13.) Accordingly, Plaintiff argues that "while [her] primary duties and tasks included the performance of office work, such work was not 'directly related to the management or general business operations' of Brown or its customers." (*Id.*)

As to the third prong, Plaintiff argues that "a majority of [her] tasks and duties were simply clerical in nature." (Pl.'s Mem. at 14.)   She asserts that "[she] did not have the authority to, among other things, carry 'out major assignments in conducting the operations of the business.'" (*Id.* at 15) (citing 29 C.F.R. § 541.202). Plaintiff states that "[she] had to rely on Mrs. Stanley to determine which court reporter was going to cover which specific job and relied on guidelines established by Mrs. Stanley, or calls to Mrs. Stanley, to determine if certain jobs were going to be accepted by Brown." (*Id.*) (citing Pl.'s Mot. Ex. B at Tr. 19, 24.)   Moreover, Plaintiff contends

that "[she] could not commit Brown in matters that had a 'significant financial impact' on Brown." (*Id.*) Plaintiff asserts that "Brown was run by Mrs. Stanley and in a manner based entirely on her guidelines." (*Id.* at 15-16.) Therefore, Plaintiff contends that "[t]he tasks and duties assigned to [her] do not fall within the requirements of the administrative exemption test." (*Id.* at 16.)

Moreover, Plaintiff asserts that she is "entitled to three years of back pay for each hour she worked in excess of forty (40) hours per week" because Brown showed a reckless disregard as to its compliance with the FLSA. (*Id.*)  Plaintiff argues that she is "entitled to her approximate calculation for overtime both because it is undisputed and because Brown's records are willfully and recklessly inadequate." (*Id.* at 19.) Plaintiff asserts that based on her "best conservative recollection, personal records, deposition notices, and conversations with others" as evidenced in her calendar, attached as Exhibit E (Document 33-5), she is entitled to approximately $55,395.23 in overtime compensation, attorney fees, costs, and liquidated damages under the FLSA. (*Id.*) (citing 29 U.S.C. §§ 207(a)(1) and 216(b)).

In response, Defendants argue that "[e]ven though [Plaintiff] answered phones and performed other duties that may be clerical in nature, her main focus was to manage the process of generating deposition transcripts, and this is the general business operation of Brown Reporting." ("Def.'s Resp." (Document 38) at 9.)   Defendants contend that "[she] directed the flow of work, the individual requirements of each project, and the overall management of transcript production." (*Id.*) For example, Defendants assert that "[Plaintiff] managed transcription projects, selected the typists that worked on projects, and supervised their efforts to meet the individual demands of clients." (*Id.* at 8) (citing Def.'s Resp. Ex. A (Document 38-1) at Tr. 74-76; 98-99.) Defendants also argue that "[Plaintiff] routinely exercised discretion and made independent decisions with

respect to general business operations, including whether to commit Brown Reporting to a client's request for services, the selection of typists for particular jobs, and the supervision of Brown Reporting personnel." (*Id.* at 10.)   Defendants argue that "[her] characterization of her selection of typists as 'recommendations' also does not affect the analysis for independent judgment" because "[t]he decisions that require discretion and independent judgment may be recommendations for action rather than taking action." (*Id.*) (quoting *Withrow,* 841 F.Supp.2d at 986.)   Furthermore, Defendants state that Plaintiff's testimony "that the procedures she followed were 'in place' before she started working for Brown Reporting . . .   has no effect on the analysis [because] 'even if it were true that the plaintiffs worked under strict guidelines, this does not preclude the exercise of discretion and independent judgment.'" (*Id.*) (quoting *Withrow,* 841 F.Supp.2d at 984.) Defendants argue that "[a]lthough the process that was 'in place' called for maintaining a list of typists as a method for keeping track of jobs, [Plaintiff] still had to decide which typists to give work to and manage each situation appropriately so that Brown Reporting could meet its obligations to its clients." (*Id.* at 11.)

Defendants also argue that "there is a genuine issue of material fact as to the hours that [Plaintiff] worked." (*Id.* at 12.)   Defendants contend that "[Plaintiff's] credibility is at issue with respect to her testimony and her calendar entries, which were admittedly created after the end of her employment with Brown Reporting." (*Id.*)   In support, Defendants stress that "[she] claims to have worked holidays such as Thanksgiving." (*Id.*)   Defendants also state that "[t]he sole reason [they] did not track [Plaintiff's] hours is because [they] reasonably believed [her] to be an exempt employee." (*Id.* at 13.)   Defendants argue that "[b]ased solely on a 'failure to keep adequate

records,' [Plaintiff's] allegation of willful violation of the FLSA fails and an extended three-year statute of limitations should not apply to this case." (*Id.* at 14.)

In reply, Plaintiff argues that "Mrs. Stanley's deposition testimony reveals that she, not [Plaintiff], oversaw all significant aspects of the production of deposition transcripts and was the supervisor of all employees – including court reporters, typists and proof readers." ("Pl.'s Reply" (Document 42) at 6-7.)   Plaintiff states that "[t]he flow of work directed to the typists was not determined by [her], but rather based upon a system created prior to [her] employment." (*Id.* at 8) (citing Pl.'s Mot. Ex. B at Tr. 56-58.)   Plaintiff asserts that Mrs. Stanley "set all the guidelines for both the practical day to day work of Brown, but also for the general business matters, such as tax, accounting, marketing, or personal matters." (*Id.*) (citing Pl.'s Mot. Ex. B at Tr. 52-54, 56-58, 110-11.)   Plaintiff also argues that "Brown's reliance on *Verkuilen* is misplaced" because, although she "was often in the office alone," that "does not indicate that the tasks and duties she completed were accomplished without supervision as suggested by the Defendant." (*Id.* at 9) (citing Def.'s Resp. at 11-12.)   Plaintiff asserts that "[she] often called Mrs. Stanley for guidance when she was unsure what to do about an issue." (Pl.'s Reply at 9) (citing Pl.'s Mot. Ex. B at Tr. 19.)   As to the third element, Plaintiff states that "[she] could not commit Brown in matters that had a 'significant financial impact' on Brown." (*Id.* at 11.) Plaintiff stresses that "[Mrs. Stanley] determined the general policy and procedures of the business," (*Id.* at 12) (citing Pl.'s Mot. Ex. B at Tr. 16, 34, 53-54) "hired and fired employees," (*Id.*) (citing Pl.'s Mot. Ex. B at Tr. 12-13) "assigned court reporters to jobs," (*Id.*) (citing Pl.'s Mot. Ex. B at Tr. 24) and "authorized [Plaintiff] to bring in office assistance if needed." (*Id.*) (citing Pl.'s Mot. Ex. B at Tr. 34.)   In sum,

Plaintiff argues that her employment with Brown does not fall within the FLSA's administrative exemption.

Plaintiff further argues her calendar, based on "her own recollection . . . documents, conversations with typists, customers and her son with whom she carpooled . . . is "more than sufficient to show the amount and extent of time for which she was not compensated" because "such a recollection is appropriate in a circumstance where the employer fails to keep adequate records." (*Id.* at 13-15) (citing *Martin v. Deiriggi*, 985 F.2d 129, 132-33 (4th Cir.1992)).   Plaintiff also asserts that "Brown willfully violated 29 U.S.C. § 211(c) by failing to make any inquiry as to whether [she] was to be paid on an hourly or salary basis . . . despite the fact that the person in the position at issue prior to [her] was paid on an hourly basis." (*Id.* at 17) (citing Pl.'s Mot. Ex. B at Tr. 17-18, 29.)

### *iii.    The Court's Findings.*

At this time, the Court finds that there are genuine disputes of material fact as to whether Plaintiff's "primary duty [wa]s the performance of office or non-manual work directly related to the management or general business operations of the employer . . ." and as to whether her "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).   In a case involving cross motions for summary judgment, "[b]oth motions must be denied if there exists a genuine issue of fact or inference of fact." *Rypkema v. Bowers*, 66 F.R.D. 564, 566 (N.D.W.Va. Dec. 18, 1974) (citing *American Fid. & Cas. Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir.1965) ("Not merely must the historic facts be free of controversy [in a summary judgment proceeding] but also there must be no controversy as to the inferences to be drawn from them.")).   Moreover, "summary judgment is not

proper where inquiry into the facts is deemed desirable by the Court to clarify the application of the law." *Rypkema*, 66 F.R.D. at 566 (citing *Kirkpatrick v. Consolidated Underwriters*, 227 F.2d 228 (4th Cir.1955)). Given the parties' conflicting deposition testimony and the opposing inferences that can be drawn from the facts stated therein, the Court finds that granting either party's motion for partial summary judgment would be inappropriate. As stated above, at this time, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Therefore, the Court finds that both Defendants' and Plaintiff's motions for partial summary judgment with respect to Count VIII should be denied.

## V.  CONCLUSION

Wherefore, based on the findings herein, the Court does hereby **ORDER** that *Defendants' Motion for [Partial] Summary Judgment* (Document 31) be **GRANTED IN PART** and **DENIED IN PART.** Specifically, the Court **ORDERS** that Defendants' motion be **GRANTED** with respect to Counts I, II, and III of Plaintiff's Amended Complaint and **DENIED** with respect to Count VIII. The Court further **ORDERS** that *Plaintiff Loretta Tee's Motion for Partial Summary Judgment Against Brown Reporting Agency, Inc. on Count VIII of the Amended Complaint* (Document 33) be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      April 2, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

27